# EXHIBIT  A

EXHIBIT "A"

PROMISSORY NOTE

$3,484,681.38                                                    July 2nd, 2024

FOR VALUE RECEIVED, in connection with that certain that certain Vessel Purchase Agreement dated of even date herewith between Borrower and Lender, the undersigned, ARROYO TERMINALS, LLC, a Texas limited liability company with offices at 21076 North Reynolds Road, Rio Hondo, Texas 78583, (the "**Borrower**"), promises to pay to the order of MC MARINE, LLC, an Alabama limited liability company with offices at 750 Viaduct Road, Chickasaw, Alabama 36611 (the "**Lender**"), at its office or at such other place as Lender may direct from time to time in writing, the principal sum of THREE MILLION, FOUR HUNDRED EIGHTY-FOUR THOUSAND, SIX HUNDRED EIGHTY-ONE AND 38/100 U.S. DOLLARS ($3,484,681.38), together with interest thereon at the rate or rates per annum designated herein (the "**Loan**").

James Jensen, in his individual capacity (the "**Guarantor**"), joins this Note for purposes of providing the Guaranty described below and acknowledging the other terms and provisions hereof.

1. **Interest Rate:** The outstanding Loan balance shall bear interest at a rate equal to nine and a half percent (9.5%) per annum.

2. **Repayment Terms:** This note is payable on demand or, with no demand, in equal monthly installments of ONE HUNDRED FIFTEEN THOUSAND THREE HUNDRED EIGHTEEN AND 62/100 ($115,318.62) beginning on August 1, 2024 and continuing on the 1st day of each of the next thirty-five (35) successive months thereafter. Unless sooner paid, all outstanding principal and accrued and unpaid interest on this Loan shall be due and payable in full on the 1st day of July, 2027 (the "**Maturity Date**").

3. **Application of Payments:** All monthly payments on this Note shall be applied without demand or presentation, the same being hereby waived by the Borrower. Any funds paid in excess of the monthly payments shall be applied to the further reduction of principal. Notwithstanding the foregoing, upon the occurrence of a default hereunder, payments shall be applied as determined by Lender in its sole discretion.

4. **Prepayment:** Borrower may prepay all or any part of the principal balance of this Note. Any partial prepayment shall not relieve or diminish any scheduled subsequent payments. Borrower agrees that it will not send the Lender any payments marked or noted "payment in full," "without recourse," or similar language. In the event Borrower sends payment with any such markings or notations, Borrower agrees that the Lender may accept such payment without waiving or losing any of the Lender's rights under this Note, that such payment shall constitute only payment of the dollar amount indicated thereon and not any further

-24-

PD.45831116.4

payment on the Note, and Borrower shall remain obligated to pay any further amounts owed to the Lender.

5. **Interest After Default**:  Any past due installments, whether of principal or interest, shall bear interest at the rate or rates herein set out until paid, except that after this Note shall become due, whether by acceleration or otherwise, and this Note shall bear interest a rate per annum equal to twelve and a half percent (12.5%) from the time of Default (the **"Default Rate of Interest"**).  The Default Rate of interest rate herein shall apply whether before or after any judgment hereon.

6. **Late Charge**:  Time is of the essence on this Note.  To the extent not prohibited by law, a late charge of five percent (5%) of the amount due shall be assessed on any payment remaining past due for ten (10) days or more.  If Lender is authorized to automatically debit periodic payments due under this Note from a deposit or other account of Borrower, at any time that there are insufficient funds in such account of Borrower and as a result, any payment is not received by Lender within ten (10) days after its due date, then a late charge of five percent (5%) of such overdue amount will, at Lender's option, be payable by Borrower.

7. **Joint and Several Liability**:  The Borrower, if more than one person, and Guarantor shall be jointly and severally liable for all amounts due and owing under this Note.

8. **Collateral**:  This Note is secured by the following collateral and security: the Vessels named "Barge MOB 3017," U.S. Coast Guard Official Number 1083431 and "Barge MOB 320," U.S. Coast Guard Official Number 1029676, and the other related property described in the First Preferred Ship Mortgage of even date herewith (the **"Security Instrument"**).  The terms and conditions of the Security Instrument and the loan documents (as herein defined) shall be considered a part hereof to the same extent as if written herein.

9. **Guaranty**.

   a. The Guarantor hereby absolutely and unconditionally guarantees to Lender the full and prompt payment when due, whether at maturity or earlier by reason of acceleration or otherwise, of amounts owed by Borrower to Lender pursuant to this Note.

   b. The guaranty provided by this Section 9 (the **"Guaranty"**) is, and is intended to be, an absolute, unconditional, irrevocable and continuing guaranty of payment and performance (and not merely of collection) which shall not be affected by any act or thing whatsoever, and which shall be binding upon the undersigned, until such Note is paid in full.

   c. Guarantor and Borrower agree that Lender shall have no obligation to attempt to enforce any obligations of Borrow or exhaust any rights or remedies against Borrower before demanding payment from Guarantor pursuant to this Guaranty. No act or thing, except full payment and discharge of all this Note, shall in any way

-25-

exonerate the Guarantor or modify, reduce, limit or release the liability of the Guarantor hereunder.

d.  The liability of Guarantor hereunder shall in no way be affected by: (a) the release or discharge of Borrower in any creditor's, receivership, bankruptcy or other proceeding; (b) the impairment, limitation or modification of the liability of Borrower in bankruptcy, or of any remedy for the enforcement of obligations of Borrower resulting from the operation of any present or future provision of any bankruptcy or insolvency code, or any amendments thereto, or other statute or from the decision of any court; (c) the rejection or disaffirmance of Borrower in any such proceedings; (d) any right or defense that may arise by reason of the incapacity, lack of authority, death or disability of Borrower or any other person; (e) any right or defense arising by reason of the absence, impairment, modification, limitation, destruction or cessation (in bankruptcy, by an election of remedies, or otherwise) of the liability of Borrower or the subrogation, reimbursement, indemnification or contribution rights of Guarantor; or (f) the cessation from any cause whatsoever of the liability of Borrower other than the full and complete payment, performance and observance or discharge of the Note.

e.  Until Borrower's duties, obligations and liabilities under the Note are satisfied or discharged in full, Guarantor (a) shall have no right of indemnity, reimbursement or subrogation against Borrower by reason of any payments or acts of performance by Guarantor under this Guaranty or otherwise; and (b) subordinates any and all liability and indebtedness of Borrower now or hereafter owed to or held by Guarantor to the liabilities of the Lender.

10. **Events of Default; Acceleration**:  The following shall constitute defaults or events of default hereunder ("**Events of Default**"):  (a) Failure by the Borrower to keep, perform or observe any agreement, covenant, or condition contained herein or in the Security Instrument or any other instrument or document executed in connection with the Loan (this Note, the Security Instrument, and all such other instruments and documents, including, without limitation, any assignments and other documents evidencing the Loan or securing this Note, are referred to in this Note as the "**Loan Documents**") or in any other document, agreement, or instrument to or which Lender is a party or beneficiary, now or hereafter, evidencing securing or otherwise relating to this Note and the Loan; or (b) Failure by the Borrower to pay this Note at Maturity, or a failure by the Borrower to pay any interest or installment payment required to be paid by this Note when due; or (c) the occurrence of an Event of Default as set forth in any other Loan Document.  Upon the occurrence of an Event of Default, the entire remaining unpaid principal of this Note and all accrued and unpaid interest thereon shall immediately become due and payable, at the option of the holder hereof.  The Lender shall be entitled to recover all expenses, including reasonable attorneys' fees actually incurred and expenses of legal counsel, incurred by the Lender in any way arising from or relating to the enforcement or attempted enforcement of this Note and any related guaranty, collateral document or other document and the collection or attempted collection, whether by litigation or otherwise, of this Note.

-26-

PD.45831116.4

11. **Waiver.** The Borrower, Guarantor, and all endorsers, and sureties, if any, hereby waive presentment for payment, demand, protest, notice of nonpayment or dishonor and of protest, and any and all other notices and demands whatsoever, and agree to remain bound under this Note until the principal and interest are paid in full, notwithstanding any extensions of time for payment which may be granted even though the period or periods of extension be indefinite and notwithstanding any inaction by, or failure to assert any legal rights available to the holder of this Note. The Borrower also waives all exemptions and any other rights or privileges under the constitution, statutes, and common law of the State of Alabama. Borrower further waives (a) any right to immunity from any action or proceeding relating to this Note and any immunity or exemption of any property, wherever located, from garnishment, levy, execution, seizure or attachment prior to or in execution of judgment, or sale under execution or other process for the collection of debts; (b) any right to interpose any setoff or non-compulsory counterclaim or to plead laches or any statute of limitations as a defense in any such action or proceeding; and (c) all provisions and requirements of law for the benefit of Borrower now or hereafter in force and effect. Failure of the Lender to exercise any right or remedy in the event of a default hereunder shall not constitute a waiver of the right to exercise such right or remedy in the event of a subsequent default. Waiver by the Lender at any time of any right conferred by this Note or any agreement securing same will not apply to any future occasion nor affect the Lender's future exercise of said right or any other rights which the Lender may have. No waiver of any right or remedy by the Lender shall be effective unless made in writing and signed by the Lender.

12. **Costs of Collection and Enforcement.** Borrower agrees to pay all costs of collection and enforcement of this Note, including, but not limited to, reasonable attorneys fees and expenses paid or incurred by the Lender on account of such collection or enforcement, whether or not a lawsuit is filed with respect thereto, and including any administrative, appellate, receivership and/or bankruptcy proceedings.

13. **Governing Law; Changes:** This Note may not be changed orally and shall be governed by and construed in accordance with the General Maritime Law of the United States and to the extent such laws shall not be applicable, the laws of the State of Alabama without regard to principles of conflict of laws.

14. **Jurisdiction; Venue:** The Borrower and Guarantor (a) submits to personal jurisdiction in Mobile County, Alabama, the courts thereof and the United States District Courts for said county, for the enforcement of this Note, (b) waives any and all personal rights under the law of any jurisdiction to object on any basis (including, without limitation, inconvenience of forum) to jurisdiction or venue within Mobile County, Alabama for the purpose of litigation to enforce this Note, and (c) agrees that service of process may be made upon the Borrower in any manner prescribed by applicable Alabama or Federal rules of civil procedure or by other applicable local rules or laws of civil procedure for the giving of notice to the Borrower. Nothing herein contained, however, shall prevent the Lender from bringing any action or exercising any rights against any security and against the Borrower personally, and against any assets of the Borrower, within any other state or jurisdiction.

-27-

15. **Payments Not to Violate Law**:  Nothing herein contained nor any transaction related thereto shall be construed or so operate as to require the Borrower to pay interest at a rate greater than what is now lawful in such case to contract for under applicable law, or to make any payment or to do any act contrary to applicable law, and the Lender shall reimburse the Borrower for any interest paid in excess of the highest rate allowed by applicable law or any other payment which may inadvertently be required by the Lender to be paid contrary to applicable law; and if any clauses or provisions herein contained operate or would prospectively operate to invalidate this Note or the Security Instrument, in whole or in part, then such clauses and provisions only shall be held for naught, as though not herein contained, and the remainder of this Note and the Security Instrument shall remain operative and in full force and effect.

16. **Miscellaneous**:  Borrower acknowledges that Lender may reproduce (by electronic means or otherwise) any of the documents evidencing and/or securing this Note and thereafter may destroy the original documents.  Borrower does hereby agree that any document so reproduced shall be the binding obligation of Borrower enforceable and admissible in evidence against it to the same extent as if the original documents had not been destroyed.  The proceeds of this Note shall be used solely to acquire or carry on a business, professional, investment, or commercial enterprise or activity.  THIS NOTE AND THE LOAN DOCUMENTS ARE ASSIGNABLE BY LENDER IN ITS SOLE DISCRETION WITHOUT PRIOR NOTICE TO OR CONSENT OF THE BORROWER OR ANY GUARANTOR.

17. **JURY WAIVER.**  LENDER AND BORROWER HEREBY KNOWINGLY, VOLUNTARILY AND INTENTIONALLY WAIVE THE RIGHT EITHER MAY HAVE TO TRIAL BY JURY IN RESPECT TO ANY LITIGATION BASED HEREON, OR ARISING OUT OF, UNDER OR IN CONNECTION WITH THIS NOTE AND ANY AGREEMENT CONTEMPLATED TO BE EXECUTED IN CONJUNCTION HEREWITH, OR ANY COURSE OF CONDUCT, COURSE OF DEALING, STATEMENTS, (WHETHER VERBAL OR WRITTEN) OR ACTIONS OF EITHER PARTY.  BORROWER ACKNOWLEDGES THAT THIS WAIVER OF JURY TRIAL IS A MATERIAL INDUCEMENT TO THE LENDER IN EXTENDING CREDIT TO THE BORROWER, THAT THE LENDER WOULD NOT HAVE EXTENDED SUCH CREDIT WITHOUT THIS JURY TRIAL WAIVER, AND THAT BORROWER HAS BEEN REPRESENTED BY AN ATTORNEY OR HAS HAD AN OPPORTUNITY TO CONSULT WITH AN ATTORNEY IN CONNECTION WITH THIS JURY TRIAL WAIVER AND UNDERSTANDS THE LEGAL EFFECT OF THIS WAIVER.

IN WITNESS WHEREOF, this Note has been executed under seal the day and year first above written.

Borrower:

ARROYO TERMINALS, LLC

BY: _____

-28-

JAMES JENSEN
Member/Manager

Guarantor:



JAMES JENSEN

STATE OF   UTAH
COUNTY OF   SALT LAKE

I, the undersigned authority, a Notary Public in and for said County in said State, hereby certify that JAMES JENSEN, both in his individual capacity and in the capacity as Member and Manager of ARROYO TERMINALS, LLC, a Texas limited liability company, is signed to the foregoing instrument and who is known to me, acknowledged before me on this day that, being informed of the contents of the foregoing instrument, he, in such capacity and with full authority, executed the same voluntarily or and as the act of said company.

Given under my hand and seal this the ____2____ day of ____July____, 2024.

_____
NOTARY PUBLIC
My Commission Expires: ____10-18-2026____

**STERLING YOUNG**
NOTARY PUBLIC · STATE OF UTAH
COMMISSION# 727315
COMM. EXP. 10-18-2026

-29-

PD.45831116.4

## VESSEL PURCHASE AND SALE AGREEMENT

This Vessel Purchase and Sale Agreement is entered into by and between MC Marine, LLC, an Alabama limited liability company (hereinafter, "**Seller**"), with its principal place of business at 750 Viaduct Rd., Chickasaw, AL 36611, and Arroyo Terminals, LLC (hereinafter, "**Buyer**"), a Texas limited liability company, with its principal place of business at 21076 North Reynolds Road, Rio Hondo, Texas 78583 on this 2nd day of July 2024.

**Vessels:**

> Barge MOB 3017
> Official Number:  1083431

> Barge MOB 320
> Official Number: 1029676

**Seller:**

> MC Marine, LLC
> 750 Viaduct Road
> Chickasaw, Alabama 36611

**Buyer:**

> Arroyo Terminals, LLC
> 21076 North Reynolds Road
> Rio Hondo, Texas 78583

1. **Sale.** Subject to the terms and conditions of this Agreement, at the Closing (as defined herein), Seller agrees to grant, sell, convey, assign, transfer, and deliver to Buyer all right, title, and interest of Seller in and to the barges MOB 3017 (Official Number: 1083431) and MOB 320 (Official Number: 1029676) (collectively, the "**Barges**").

2. **Purchase Price and Payment**.

   a.   The total purchase price for the Barges shall be three million, six hundred thousand USD ($3,600,000.00) (the "**Purchase Price**"), determined as follows:

   > i.    MOB 3017: $1,800,000; and

   > ii.   MOB 320: $1,800,000.

   b.   Buyer shall pay the Purchase Price as follows:

   > i.    $115,318.62 in immediately available funds at Closing (the "**Cash Portion**"); and

   > ii.   The balance of the Purchase Price shall be paid to Seller pursuant to a Promissory Note (the "**Note**").  The Note shall provide that the unpaid

PD.45877915.4



principal balance thereof shall bear interest at a rate of 9.5% per annum and shall provide for thirty-five equal monthly payments amortized over such term with all outstanding principal and interest due on the third anniversary of the Closing Date. Monthly payments shall be due on the first (1st) day of each month during the term and will be considered past due after the tenth (10th) day of such month. All payments shall be made by check, wire transfer, or ACH to Seller's bank, as directed by Seller, without notice or demand.

iii.     The Note shall be secured by a First Preferred Ship Mortgage on each of the Barges and James Jensen shall personally guaranty the payment and performance of the Note.

3.     **Closing; Closing Date; Closing Documents.**

a.     Subject to the terms and conditions of this Agreement, the consummation of the transactions contemplated by this Agreement shall take place at a closing (the "**Closing**") no later than July 2nd 2024, or at such other time or on such other date as Seller and Buyer may mutually agree in writing. The date on which the Closing is to occur is herein referred to as the "**Closing Date**". Unless otherwise agreed to in writing by the Parties, the Closing shall take place through the exchange of copies of the duly executed sale documents by scanned electronic mail with the subsequent exchange of original executed counterparts as soon as practicable after the Closing.

b.     At the Closing, the Seller shall execute, as applicable, and deliver the following to the Buyer:

i.     The Cash Portion of the Purchase Price;

ii.     Bill of Sale (CG – 1340) for MOB 3017;

iii.     Bill of Sale (CG – 1340) for MOB 320; and

iv.     Certificate of Delivery.

c.     At the Closing, the Buyer shall execute and deliver the following to the Seller:

i.     The Note;

ii.     The First Preferred Ship Mortgage;

iii.     Personal Guaranty of James Jensen;

iv.     Certificate of Delivery.

d.     Within seven (7) days following the Closing Date, Buyer agrees to file USCG 1258 with respect to each of the Barges and deliver written confirmation to Seller of such filing.

- 2 -

PD.45877915.4

4.    **Delivery; Risk of Loss; Closing Deliverables**

    a.    The Barges shall be delivered at the Closing safely afloat alongside at Seller's facility in Chickasaw, Alabama, or as otherwise agreed to in writing between the Parties. At the Closing, the Parties shall execute a Certificate of Delivery and Acceptance, in the form attached hereto as **Exhibit A** (the "**Protocol of Delivery**"), to evidence the delivery and acceptance of the Barges. At 12:00 a.m. on the Closing Date (the "**Effective Time**"), all risk of loss or damage to the Barges shall transfer to Buyer, and Seller shall not be responsible for and shall be defended, indemnified, and held harmless for any subsequent damage to or loss of the Barges. Prior to the Effective Time, the risk of loss of the Barges shall be borne by the Seller. Buyer shall remove the Barges from Seller's facility within ~~twelve (12) hours~~ after the Closing. _Two Weeks_

    b.    If the Barges are destroyed prior to Closing by an Act of God, or other cause, this Agreement shall become null and void.

5.    **Taxes**. Any taxes imposed by any county, state, or local authority on the sale of the Barges shall be borne by Buyer. Any ad valorem, property, and similar taxes and assessments for any period on or prior to the Closing Date will be the responsibility of Seller, and any ad valorem, property, and similar taxes and assessments for any period after the Closing Date will be the responsibility of Buyer.

6.    **Condition of the Barges**.

    a.    THE BARGES ARE TRANSFERRED BY SELLER TO BUYER ON AN "AS IS, WHERE IS" BASIS WITH ALL FAULTS. EXCEPT AS SET FORTH HEREIN, SELLER MAKES NO WARRANTIES, EXPRESS OR IMPLIED, WRITTEN OR ORAL, INCLUDING, BUT NOT LIMITED TO, WARRANTIES OF SEAWORTHINESS, MERCHANTABILITY, OR FITNESS FOR ANY PARTICULAR PURPOSE. BUYER HEREBY ACKNOWLEDGES AND AGREES THAT IT HAS EXAMINED, INSPECTED, AND EVALUATED THE BARGES AS OF THE EFFECTIVE DATE AND THE CLOSING DATE AND THAT IT IS RELYING SOLELY ON ITS OWN EXAMINATION, INSPECTION, AND EVALUATION OF THE BARGES AND NOT UPON ANY WARRANTIES OR REPRESENTATIONS OF SELLER OR ANY OTHER PERSON OR ENTITY ACTING ON BEHALF OF SELLER. WITHOUT LIMITING THE GENERALITY OF THE FOREGOING, BUYER FOREVER WAIVES AND DISCHARGES SELLER FROM ANY CLAIM, LIABILITY, LOSS, EXPENSE, OR CAUSE OF ACTION RELATING TO THE CONDITION OR ANY DEFICIENCY OR DEFECT OF ANY BARGE, INCLUDING, WITHOUT LIMITATION, ANY AND ALL CLAIMS (WHETHER BASED IN IMPLIED WARRANTY, CONTRACT, TORT, NEGLIGENCE, STRICT LIABILITY, OR ANY OTHER THEORY OF RECOVERY) ARISING UNDER ANY LAWS OF ANY COUNTRY INCLUDING, WITHOUT LIMITATION, THE UNITED STATES OF AMERICA, FEDERAL MARITIME LAW, OR UNDER ANY LAWS OF ANY STATE OF THE UNITED STATES OF

- 3 -

AMERICA. BUYER FURTHER DECLARES AND ACKNOWLEDGES THAT THE FOREGOING WAIVERS HAVE BEEN BROUGHT TO THE ATTENTION OF BUYER AND EXPLAINED IN DETAIL TO IT AND THAT BUYER HAS VOLUNTARILY AND KNOWINGLY CONSENTED TO THE FOREGOING WAIVERS.

b.      The provisions of Subsection (a) above may be incorporated by Seller into and made a part of the bills of sale to be delivered to Buyer at Closing, but, in all events and under every circumstance, the foregoing disclaimer of warranties and release of claims shall be fully binding on Buyer and its successors and assigns and shall survive this Agreement and passage of title to Buyer and its successors and assigns.

7.      **No Consequential Damages**.  Under no circumstances and under no theory of law, whether contract, quasi-contract, strict liability, warranty, tort (including the sole or concurrent negligence), fault, or any other theory of law or cause of action, shall Buyer or Seller have any liability to the other for (i) loss of revenue, loss of profit, loss of use of capital or production delays, loss of any portion of or all of a vessel, delays in delivery of any Barge, losses resulting from failure to meet other contractual commitments or deadlines, downtime of facilities or vessels, in each case, regardless of whether such claim, or the basis thereof, is considered as a consequential damage or not, or (ii) indirect or consequential loss or damage, however and whenever arising under this Agreement or as a result of or in connection with any Barge, and whether based on negligence, whether sole or concurrent or active or passive, or unseaworthiness, breach of warranty, breach of contract, or otherwise.

8.      **Representations and Warranties of Seller**.  Seller represents and warrants that the following statements are true, correct, and complete as of the Effective Date and will be true, correct, and complete as of the Closing Date as though made then:

a.      Seller is duly organized, validly existing, and in good standing under the laws of its jurisdiction of organization, with full limited liability company power and authority to conduct its business.

b.      Seller is the sole lawful owner of each Barge, has good, valid, merchantable, and lawful title to the whole of each Barge, and is duly authorized to sell each Barge. The Barges are subject to no claims, charters, attachments, charges, restrictions, pledges, liens, encumbrances, mortgages, security interests, leases, management agreements, rights of third parties, or other encumbrances of any nature or kind whatsoever.

c.      There is no action, suit, or proceeding pending against the Seller or the Barges before or by any court, administrative agency, or other governmental authority, which brings into question the validity of, or might in any way impair, the execution, delivery, or performance by the Seller, of any Seller document.  The Barges are not the subject of any action, suit, or proceeding before or by any court, administrative agency, or other governmental authority arising from the violation of any environmental, occupational safety, or health law.

- 4 -

PD.45877915.4



d.      Seller is fully authorized to enter into this Agreement, and this Agreement constitutes the legal, valid, and binding obligation of Seller.

9.     **Representations and Warranties of Buyer**.  Buyer represents and warrants that the following statements are true, correct, and complete as of the Effective Date and will be true, correct, and complete as of the Closing Date as though made then:

a.      Buyer is duly organized, validly existing, and in good standing under the laws of its jurisdiction of organization, with full limited liability company power and authority to conduct its business.

b.      Buyer is duly authorized to buy the Barges and has all power and authority necessary to buy the Barges.

c.      There is no action, suit or proceeding pending against the Buyer before or by any court, administrative agency, or other governmental authority which brings into question the validity of, or might in any way impair, the execution, delivery, or performance by the Buyer, of any Buyer document.

d.      Buyer is fully authorized to enter into this Agreement, and this Agreement constitutes the legal, valid, and binding obligation of Buyer.

e.      Buyer is a citizen of the United States as set forth in 46 U.S.C. § 50501.

f.      Buyer has sufficient funds to pay the Purchase Price in accordance with Section 2 of this Agreement.

10.    **Choice of Law; Forum Selection; Jury Waiver**.

a.      The validity and interpretation of this Agreement and the legal relations of the Parties to it shall be governed, to the extent applicable, by the general maritime law of the United States, and, to the extent that the general maritime law of the United States is not applicable, the laws of the State of Alabama, without regard to any of its principles of conflicts of laws that would make applicable the laws of any other jurisdiction. The Parties hereto hereby further irrevocably consent that any legal action or proceeding against either of them under, arising out of, or in any manner relating to this Agreement shall be brought in the state or federal courts of Alabama. The Parties hereto, by execution of this Agreement, expressly and irrevocably assent and submit to the personal jurisdiction of Alabama Courts in any such action or proceeding.

b.      EACH PARTY WAIVES, TO THE FULLEST EXTENT PERMITTED BY APPLICABLE LAW, ANY RIGHT IT MAY HAVE TO A TRIAL BY JURY IN RESPECT OF ANY SUIT, ACTION, OR PROCEEDING RELATED TO THIS AGREEMENT.

11.    **Amendment and Modification; Waiver; Survivability; Assignability**.

- 5 -

PD.45877915.4

a.   This Agreement may only be amended, modified, or supplemented by an agreement in writing signed by each Party hereto. No waiver by any Party of any of the provisions hereof shall be effective unless explicitly set forth in writing and signed by the Party so waiving. No waiver by any Party shall operate or be construed as a waiver in respect of any failure, breach, or default not expressly identified by such written waiver, whether of a similar or different character, and whether occurring before or after that waiver. No failure to exercise, or delay in exercising, any right, remedy, power, or privilege arising from this Agreement shall operate or be construed as a waiver thereof; nor shall any single or partial exercise of any right, remedy, power, or privilege hereunder preclude any other or further exercise thereof or the exercise of any other right, remedy, power, or privilege.

b.   The waivers, indemnities, representations, and warranties set forth in this Agreement shall survive the Closing.

c.   This Agreement shall be binding upon and shall inure to the benefit of the Parties hereto and their respective successors and permitted assigns. Neither Party may assign its rights or obligations hereunder without the prior written consent of the other Party, which consent shall not be unreasonably withheld or delayed. No assignment shall relieve the assigning party of any of its obligations hereunder.

[signature page to follow]

PD.45877915.4

- 6 -



- 7 -

**[SIGNATURE PAGE TO VESSEL PURCHASE AGREEMENT]**

    **IN WITNESS WHEREOF**, MC Marine, LLC and Arroyo Terminals, LLC and have executed this Agreement as of the 2nd day of July 2024.

 

**MC Marine, LLC (Seller)**
By:_____
Name: Samuel Myers
Title: Managing Owner

 

**Arroyo Terminals, LLC** (Buyer)

By: _____
Name: James Jensen
Title: Managing Member/Owner

PD.45877915.4

## EXHIBIT A

## CERTIFICATE OF DELIVERY AND ACCEPTANCE

MC Marine, LLC, hereinafter called "Seller," and Arroyo Terminals, LLC, hereinafter called "Buyer", DO HEREBY CERTIFY That on the 2nd day of July 2024, at 1200 hours (local time), while the Vessels were safely afloat at Eagles landing Chickasaw AL the Buyer accepted from the Seller the inland tank barge MOB 3017 Official Number: 1083431 and inland tank barge MOB 320 Official Number: 1029676 pursuant to that certain Vessel Purchase and Sale Charter dated July 2nd 2024 between Seller and Buyer at which time the risk of loss and/or damage passed to Seller from Buyer.

IN WITNESS WHEREOF, the Seller and Buyer have caused their duly authorized representative to execute this Certificate on 2nd day of July 2024.

MC Marine, LLC (Seller)
By: _____
Name: Samuel Myers
Title: Managing Owner

Arroyo Terminals, LLC (Buyer)
By: _____
Name: James Jensen
Title: Managing Member/Owner

PD.45877915.4

| Invoice No. | Pymt Rec. Date | Amount Rec. | Invocie Details |
|---|---|---|---|
| Downpayment | 7/3/24 | $ 115,318.61 | Downpayment at Closing |
| INV-0752 | 8/1/24 | $ 115,318.62 | Invoice for Aug 2024 |
| INV-0760 | 9/5/24 | $ 111,624.62 | Invoice for Sept 2024 |
| INV-0761 | 10/1/24 | $ 111,624.62 | Invoice for Oct 2024 |
| INV-0762 | 11/1/24 | $ 107,930.62 | Invoice Nov 2024 |
| INV-0763 | 12/1/24 | $ 111,624.62 | Invoice for Dec 2024 |
| INV-0901 | 1/9/25 | $ 111,624.62 | Invoice for Jan 2025 |
| INV-0909 | 2/3/25 | $ 111,624.62 | Invoice for Feb 2025 |
| INV-0910 | 3/7/25 | $ 55,812.31 | Invoice for March 2025 |
| | 3/21/25 | $ 55,812.31 | |
| INV-0911 | 4/2/25 | $ 111,624.62 | Invoice for April 2025 |